## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELEN WHITE, | : Civil No. 1:24-CV-1900 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

## I.  Introduction

Helen White filed an application under Titles II and XVI of the Social Security Act for disability and disability insurance benefits and supplemental security income on February 1, 2022.  Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that White was not disabled from her alleged onset date of December 31, 2020, through January 31, 2024, the date of the ALJ's decision.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Bisignano is substituted as the defendant in this suit.

White now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[2] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

Helen White filed for disability and disability insurance benefits, as well as supplemental security income, alleging disability due to moderate spinal stenosis, scoliosis, bulging and herniated discs in the lower back, degenerative disc disease, arthritis, type 2 diabetes, high cholesterol, and high blood pressure.[3] White was 60 years old at the time of her alleged onset of disability and had past relevant work as a kitchen supervisor.[4]

The medical record regarding White's impairments revealed that White treated for persistent lower back and extremity pain prior to the

---

[2] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[3] Tr. 67.
[4] Tr. 26, 67.

alleged disability period. Thus, in September of 2020, at a visit to Lebanon Valley Family Medicine for a diabetes follow up, Dr. Mark Leach, M.D., noted White's persistent back pain radiating to her legs.[5] White reported that her legs felt like they would give out at times, and that her pain was worse with prolonged standing and walking.[6] Dr. Leach noted that White was taking narcotic pain medications and had received epidural shots with no relief.[7] She was advised to continue with the pain clinic for pain management.[8]

White was seen at the Lebanon Pain Relief Center in November, at which time she reported taking more Percocet due to increased lower back and leg pain.[9] Notes from this visit detail White's history of treatment for her chronic pain, including a lumbar spine MRI from 2017 showing moderate to severe spinal stenosis, a 2017 lumbar spine x-ray showing moderate right scoliosis and marked degenerative changes at all

---

[5] Tr. 400-01.
[6] Tr. 400.
[7] Tr. 400-01.
[8] Tr. 403.
[9] Tr. 578.

levels, and that White received injections for her pain in 2017 and 2018.[10] A physical examination revealed that White walked with an antalgic gait with a cane and had moderately reduced range of motion in her lumbar spine.[11]  In December, White reported she had missed a lot of work and had resigned.[12]

Treatment notes from the Pain Relief Center in February of 2021 indicate that White reported increased pain, which was aggravated by daily activities, bending, lifting, sitting, standing, and walking.[13]  A physical examination revealed an antalgic gait with a cane and moderately reduced range of motion, as well as normal balance, coordination, and fine motor skills.[14]  Dr. Daniel Lorenzo filled White's medications, and she was advised to follow up in one month.[15]  In March, White reported that while the Butrans patch she was using was providing some relief, and she was taking fewer Percocet since starting

---

[10] Tr. 578-79.
[11] Tr. 582.
[12] Tr. 571.
[13] Tr. 564.
[14] Tr. 568-69.
[15] Tr. 569.

4

the patch, she could no longer afford it.[16]  Dr. Lorenzo prescribed her a

fentanyl patch.[17]    White reported in June that the fentanyl patch

provided good pain relief, and the side effects she initially had were

resolved.[18]  White made a similar report to Dr. Lorenzo in September, at

which time a physical examination revealed an antalgic gait with a cane,

tenderness of the lumbar spine, and normal balance, coordination, and

fine motor skills.[19]

In November, treatment notes from the Pain Relief Center indicate

that White's pain level was a four, and that her pain was fluctuating and

intermittent.[20]  She took Percocet only for exacerbations, which provided

some relief.[21]  White reported experiencing increased pain for a week in

December, but she was still getting good relief from the fentanyl patch.[22]

A physical examination was similar to her prior visits, indicating an

antalgic gait with a cane and moderate pain with range of motion, but

---

[16] Tr. 557.
[17] Tr. 562.
[18] Tr. 543.
[19] Tr. 520, 524-25
[20] Tr. 514.
[21] *Id.*
[22] Tr. 499.

normal balance, coordination, and fine motor skills.[23]  Treatment notes from her family doctor around this time indicate that White injured her foot when she hit her recliner.[24]  An x-ray showed a traumatic fracture, and White was prescribed a walker to help maintain her self-sufficiency and daily activities.[25]  Dr. Lorenzo noted in January of 2022 that White was wearing a boot after fracturing her foot, but that her lower back pain symptoms were about the same.[26]

White underwent an x-ray of her right knee in March of 2022, which showed tricompartmental osteoarthritis.[27]  White was diagnosed with primary osteoarthritis of the right knee in April and underwent injections.[28]  An examination at this time revealed an antalgic gait with a cane, no tenderness, and normal sensation to light touch.[29] Around this time, White followed up with the Pain Relief Center, where it was noted

---

[23] Tr. 504.
[24] Tr. 385.
[25] Tr. 365-66, 387.
[26] Tr. 489.
[27] Tr. 364.
[28] Tr. 432, 435.
[29] Tr. 434.

she experienced partial relief from the knee injection.[30]  Her back pain was noted to be at a severity level of eight, and a physical examination was similar to prior examinations, showing an antalgic gait, moderate pain with range of motion, and normal balance, coordination, and fine motor skills.[31]  In May, White reported that her knee pain was back to its baseline, and her back pain was a severity level of five.[32]

White received injections in her knee between July and September of 2022.[33]  In August, White reported to her family doctor that she was experiencing leg aches and swelling.[34]  Dr. Leach advised her to elevate her legs and watch her salt intake.[35]  In September, White advised that she had not experienced much improvement in her pain from the injections.[36]  At a visit to the Pain Relief Center in October, White reported increased pain and swelling in her lower extremities.[37]  It was

---

[30] Tr. 457.
[31] Tr. 457, 462.
[32] Tr. 450.
[33] Tr. 801-09.
[34] Tr. 691-92.
[35] Tr. 692.
[36] Tr. 670.
[37] Tr. 715.

noted that an increase in Gabapentin helped with her leg spasms and cramps.[38]  A physical examination revealed an antalgic gait with a cane, mild pain with range of motion, and normal balance, coordination, and fine motor skills.[39]  Treatment notes from a November 2022 visit contained largely identical findings, but in January of 2023, White reported increased pain.[40]

In March of 2023, White underwent surgery for carpal tunnel syndrome in her right hand.[41]  Prior to surgery, she reported difficulty with everyday tasks, such as opening a water bottle.[42]  At her two-week post operative appointment in April, White reported numbness and tingling in her right hand but noted improvement in strength, pain, and sensation.[43]  Around this time, White also underwent another injection for her knee pain.[44]  In May, treatment notes from the Pain Relief Center indicate that White was receiving adequate relief from her pain

---

[38] *Id.*
[39] Tr. 720.
[40] Tr. 707-13, 846.
[41] Tr. 795.
[42] Tr. 798.
[43] Tr. 788.
[44] Tr. 784.

medications, although her back pain was persistent but fluctuating.[45]  A physical examination revealed an antalgic gait with a cane, facet joint loading, and moderate pain with range of motion.[46]  White reported increased pain to Dr. Lorenzo in July of 2023, at which time he discussed the possibility of trying CBD oil.[47]

White continued to treat at the Pain Relief Center throughout 2023. Treatment notes from October to December indicate that White's pain was persistent but stable, she was receiving adequate relief from her medications, and she had no new concerns.[48]  Examinations in November and December revealed positive face joint loading, positive straight leg raise testing, and no edema.[49]  White also continued to receive knee injections around this time.[50]  Additionally, throughout the relevant period, White's body mass index ("BMI") was indicative of obesity.[51]

---

[45] Tr. 817.
[46] Tr. 821.
[47] Tr. 934, 938.
[48] Tr. 927, 965, 1174.
[49] Tr. 970, 1179.
[50] Tr. 1200-04.
[51] *See e.g.*, Tr. 382, 397, 873, 1217.

It is against the backdrop of this record that an ALJ held a hearing on White's disability application on January 9, 2024.[52]  White and a Vocational Expert both appeared and testified at this hearing.[53] Following this hearing, on January 31, 2024, the ALJ issued a decision denying White's application for disability benefits.[54]  The ALJ first concluded that White had not engaged in substantial gainful activity since her alleged onset date of December 31, 2020.[55]  At Step 2 of the sequential analysis that governs disability claims, the ALJ found that White suffered from severe impairments of lumbar degenerative disc disease, right carpal tunnel syndrome, and right knee osteoarthritis.[56] The ALJ found White's obesity to be nonsevere, and noted that there was little evidence to suggest that her obesity more than minimally affected her abilities or contributed to the effects of her other impairments.[57]  At Step 3, the ALJ concluded that none of these impairments met or equaled

---

[52] Tr. 34-60.

[53] *Id.*

[54] Tr. 15-33.

[55] Tr. 21.

[56] *Id.*

[57] Tr. 21-22.

the severity of a listed impairment under the Commissioner's regulations.[58]

Between Steps 3 and 4, the ALJ then concluded that White:

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry no more than 10 pounds on either a frequent or occasional basis. The claimant can sit 6 hours, stand 2 hours, and walk 2 hours during an 8-hour workday; can occasionally perform postural activities except that the claimant can never climb ladders/ropes/scaffolds, kneel, or crouch; can never push or pull with the right lower extremity; can frequently handle and finger with the right upper extremity; and can tolerate no concentrated exposure to extreme heat, vibration, unprotected heights, and moving machinery parts.[59]

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and White's reported symptoms. With respect to the medical opinion evidence, the ALJ considered the opinions of state agency consultants, Drs. Sasnauskas and Deleo, and found these opinions persuasive.[60] These opinions found that White could perform a range of sedentary work

---

[58] Tr. 22.

[59] Tr. 23.

[60] Tr. 25-26.

with some additional postural limitations.[61]    The ALJ reasoned that these opinions were generally consistent with White's allegations and with the treatment records reviewed by these physicians.[62] However, the ALJ accounted for a more restrictive limitation as it related to White's right lower extremity.[63] He also increased White's capacity to stand and walk from 2 hours total to 2 hours each occasion due to White's later-reported response to her pain medications.[64]

With respect to White's symptoms, the ALJ found that White's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence.[65]    White testified that her diabetes, cholesterol, and blood pressure were managed well with medication.[66] She reported lower back pain that radiated into her legs, and that she used a cane to help her walk.[67]    She further testified that she was able to perform some

---

[61] Tr. 69-71, 86-89.
[62] Tr. 26.
[63] *Id.*
[64] *Id.*
[65] Tr. 23-25.
[66] Tr. 39.
[67] Tr. 40.

household chores with breaks, but that she needed help to grocery shop.[68] White stated that she could not sit, stand, or walk for long periods of time due to pain, but that her pain medications helped her symptoms.[69]

The ALJ ultimately found White's testimony to be inconsistent with the objective clinical findings.[70] The ALJ recounted the objective medical evidence, including the abnormal findings of an antalgic gait and reduced range of motion and unremarkable findings of normal balance, sensation, coordination, and motor skills.[71] He further recognized that White's treatment records and testimony indicated her pain was managed with medications.[72] Ultimately, the ALJ concluded that White was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that White could perform her past work as a kitchen supervisor.[73] Accordingly, the

---

[68] Tr. 46-47.
[69] Tr. 51-53.
[70] Tr. 23-25.
[71] Tr. 23.
[72] *Id.*
[73] Tr. 26-27.

ALJ found that White had not met the stringent standard prescribed for disability benefits and denied her claim.[74]

This appeal followed. On appeal, White argues that the ALJ's decision is not supported by substantial evidence because he failed to account for White's use of a cane, address her obesity, and adequately develop the record. This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.    Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[75] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

---

[74] Tr. 27.

[75] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

adequate to support a conclusion."[76]    Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[77]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[78]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[79]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[80]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to

---

[76] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[77] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[78] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[79] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[80] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

support a conclusion.'"[81]    Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[82]    Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[83]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[84]    Thus, we cannot re-weigh the evidence. Instead, we must determine whether

---

[81] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[82] *Id.*

[83] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[84] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[85] This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[86]   Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[87]

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less

---

[85] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[86] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[87] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

than 12 months."[88]  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[89]  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[90]

In making this determination, the ALJ follows a five-step evaluation.[91]  The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[92]

---

[88] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).
[89] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[90] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[91] 20 C.F.R. §§404.1520(a), 416.920(a).
[92] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[93] In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[94] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[95]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[96] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform

---

[93] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).
[94] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[95] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).
[96] *Mason*, 994 F.2d at 1064.

consistent with the claimant's RFC, age, education, and work experience.[97]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[98] Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[99]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically

---

[97] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

[98] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[99] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[100] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[101]    Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[102]

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the

---

[100] *Biller*, 962 F. Supp. 2d at 778–79.
[101] *See Titterington*, 174 F. App'x 6; *Cummings*, 129 F. Supp. 3d at 214–15.
[102] *Burns*, 312 F.3d 113.

claimant, specialization, and other factors tending to support or contradict a medical opinion.[103] Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[104] Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[105] The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[106]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[107] When confronted with several medical opinions, the ALJ can choose to credit certain opinions

---

[103] 20 C.F.R. § 404.1520c(c).

[104] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

[105] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[106] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[107] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

over others but "cannot reject evidence for no reason or for the wrong reason."[108]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[109]    On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[110]

### D. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[111]  Our review of those determinations is deferential.[112]  However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not

---

[108] *Mason*, 994 F.2d at 1066.
[109] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).
[110] *Cummings*, 129 F. Supp. 3d at 214–15.
[111] *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009).
[112] *Id.*

credible."[113]  An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[114]  As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them."[115]

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms.[116]  Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[117]

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or

---

[113] *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).
[114] *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).
[115] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").
[116] 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p.
[117] SSR 16-3p.

laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.[118]  During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record.[119]  This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[120]

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings.[121]  Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that

---

[118] 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p.
[119] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.
[120] *Id.*
[121] SSR 16-3p.

may be relevant to the assessment of the claimant's alleged symptoms.[122] These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.[123]

### E. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[124]  Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

White first argues that the ALJ erred in failing to account for her use of a cane in the RFC or in the hypothetical to the vocational expert.

---

[122] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[123] *Id.*

[124] *Biestek*, 139 S. Ct. at 1154.

In some cases, the claimant's use of a cane may be outcome-determinative.  However, the burden lies with the claimant initially to show that the cane is medically required by providing "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]"[125]  If the claimant demonstrates such a medical necessity, then the ALJ must directly "address the evidence concerning Plaintiff's use of" an assistive device.[126]  The failure to do so may require a remand.[127]  Additionally, when the evidence demonstrates the medical necessity of the assistive device, and a vocational expert testifies that the claimant's use of an assistive device would render him or her unable to work, the ALJ must set forth the reasons for rejecting this expert testimony.[128]

---

[125] *Howze v. Barnhart*, 53 F. App'x 318, 222 (3d Cir. 2002) (citing SSR 96-9p).

[126] *Steward v. Comm'r of Soc. Sec.*, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009).

[127] *Id.*

[128] *Altomare v. Barnhart*, 394 F. Supp. 2d 678, 682 (E.D. Pa. 2005).

In the instant case, the ALJ acknowledged White's testimony that she required a cane for walking, as well as the medical records that indicated White used a cane.[129]  But as we have noted, the ALJ found that White's testimony was not entirely consistent with the medical evidence.  Additionally, there are no medical records establishing that the use of the cane was medically necessary or describing the circumstance for which a cane was needed.  Indeed, while the treatment notes during the relevant period and the state agency opinions reference White's use of a cane, simply "[n]oting that Plaintiff used a cane throughout treatment records . . . is insufficient to overcome the threshold showing that the cane was medically necessary."[130]  Accordingly, we find this argument unavailing.

White next argues that the ALJ failed to adequately consider her obesity in accordance with SSR 19-2p.  The Third Circuit has explained that the ALJ need not "use particular language or adhere to a particular

---

[129] Tr. 23-25.

[130] *Russell William T. v. O'Malley*, 2024 WL 4906490, at *10 (E.D. Pa. Nov. 27, 2024) (citing *Howze*, 53 F. App'x at 222).

format in conducting his analysis" of a claimant's obesity.[131]  Rather, so long as the ALJ "meaningfully consider[s] the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step[,]" a remand is not required.[132]  In the instant case, the ALJ recognized that the plaintiff's BMI during the relevant period was indicative of obesity but found this impairment to be nonsevere.[133]  While he acknowledged the findings and the claimant's testimony as to her obesity, he reasoned that there was no evidence in the record to demonstrate that her obesity had more than a minimal effect on her abilities or on her severe physical impairments.[134]  The plaintiff fails to point to evidence showing that her obesity had more than a minimal effect on her abilities, and instead generally refers to her physical impairments and her complaints that her pain was worse with prolonged sitting, standing and walking.  But as we

---

[131] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[132] *Id.* at 504; *See Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016); *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014).
[133] Tr. 21-22.
[134] *Id.*

have noted, the ALJ explained why he found White's testimony not entirely consistent with the medical evidence. Ultimately, we conclude that the ALJ's assessment of White's obesity is supported by substantial evidence.

Finally, White asserts that the ALJ failed to adequately develop the record because there was no opinion from a consultative or examining physician regarding White's physical capabilities. Thus, she argues that the ALJ's RFC determination was improperly based on his lay opinion. "ALJs have a duty to develop a full and fair record in social security cases[.]"[135]  But this duty "does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision."[136]  "The decision to order a consultative examination is within the sound discretion of the ALJ."[137]

Here, the ALJ concluded, based on the opinions of the state agency consultants, as well as the medical records and White's testimony, that she could perform a range of light work with additional postural

---

[135] Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995).
[136] *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002).
[137] *Id.*

limitations. Although the state agency opinions found that White could perform a range of sedentary work, the ALJ explicitly reasoned that he increased White's standing and walking capabilities based on White's own testimony that her pain was well-managed with medication. This finding was supported by the medical records in 2023 that demonstrated White's pain was adequately managed with her medications. While the plaintiff contends that a consultative examination was necessary, she fails to demonstrate that there was an unexplained conflict or inconsistency in the evidence that would have required the ALJ to order a consultative examination.[138] Therefore, a remand is not required.

Given that the ALJ considered all the evidence and adequately explained the decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision will be affirmed.

---

[138] *See* 20 C.F.R. 416.920b.

IV.    <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 23rd day of February 2026.


<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge

32